542 A.2d 606

The Peoples Natural Gas Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued March 23, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, COLINS, PALLADINO, McGINLEY, and SMITH.

*Dennis J. Lewis,* with him, *Patricia Armstrong, Robert M. Lucas, Alder, Cohen & Grigsby, P.C.* and *William P. Boswell,* for petitioner.

*Frank B. Wilmarth,* Assistant Counsel, with him, *Mark C. Morrow,* Assistant Counsel, *Will C. Matthews,* Deputy Chief Counsel, *Daniel P. Delaney,* Chief Counsel, for respondent.

*Lawrence B. Nydes,* for intervenor, Equitable Gas Company.

*Norman James Kennard, Kenneth Zielonis, Tucker Arensberg, P.C.,* for intervenor, Apollo Gas Company.

*Bernard A. Ryan, Jr., Dechert, Price & Rhoads,* for intervenor, Eljer Plumbingware Division, Household Manufacturing, Inc.

*Bruce Wiegand,* with · him, *Walter A. Bunt, Jr., Nancy L. Krzton, Kirkpatrick & Lockhart,* and *Jay W. Dawson,* for intervenor, T. W. Phillips Gas and Oil Company.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., June 3, 1988:

Peoples Natural Gas Company (Peoples) appeals[1] a Pennsylvania Public Utility Commission (PUC) order dated January 5, 1987, adopting the recommended decision of Administrative Law Judge (ALJ) MICHAEL A. NEMEC and authorizing Apollo to serve the Eljer manufacturing plant in Ford City, Armstrong County, Pennsylvania.

Pursuant to a 1938 Certificate of Public Convenience (CPC)[2] and charter rights,[3] Peoples has the right to serve Ford City. The only other natural gas company

---

[1] Eljer Plumbingware, Inc. (Eljer), Apollo Gas Company (Apollo) and T. W. Phillips Gas and Oil Company (Phillips) intervene on behalf of the PUC. Equitable Gas Company (Equitable) filed a notice of intervention. In its brief, Equitable seeks to support the position of petitioners. This Court expressly disapproves of the practice of an intervenor purporting to represent the position of petitioner as opposed to itself filing a petition for review. *See* 1 Darlington, McKeon, Schuckers, Brown, *Pennsylvania Appellate Practice,* §1531:3 (1986).

[2] The PUC issued a CPC to Peoples on December 20, 1938, thereby granting to Peoples the right to provide natural gas service to the public in a territory which included Ford City and Manor Township.

[3] Peoples was incorporated under the Act of May 29, 1885, P.L. 29, *as amended,* 15 P.S. §3541-3555 (hereafter referred to as Natural Gas Companies Act of 1885), which required, *inter alia,* that Peoples file a charter indicating "[t]he place or places where natural gas is intended to be mined for and produced or received, the place or places where it is to be supplied to consumers, [and] the general route of its pipe line or lines and branches. . . ." Section 2 of the Natural Gas Companies Act of 1885, 15 P.S. §3542.

with service rights in the area was PPG, Inc. (PPG), which had a plant in Ford City. In 1971, PPG contracted to convey ownership of PPG's pipeline and other service equipment to Apollo, conditioned on Apollo's continuing obligation to supply PPG's needs. In conjunction with this agreement, Apollo applied to the PUC for authority to service PPG. The PUC granted a CPC on April 5, 1971, which stated, *inter alia:*

1. That applicant Apollo Gas Company shall *confine* and *restrict* its utility operations in the aforesaid areas to the furnishing of natural gas service to (1) the existing Ford City plant location of PPG Industries, Inc. . . .

2. That applicant, Apollo Gas Company, its successors and assigns, shall *not furnish* natural gas service *to the general public* within the aforesaid areas without the approval of the Commission first had and obtained.

(Emphasis added.)

In 1985, when Apollo agreed to serve Eljer, Eljer built a service line to connect with Apollo's pipeline at Ford City. Peoples filed a complaint with the PUC and subsequently obtained a preliminary injunction against Apollo in Armstrong County Common Pleas Court prohibiting the service until the PUC adjudicated the administrative complaint.

The ALJ recognized Apollo's right to serve Eljer, and the PUC agreed, ruling (1) that Apollo's 1971 application to serve PPG did not constitute an admission that it did not have independent rights in the territory; (2) that the prohibition against serving "the general public" in the 1971 CPC referred to the public as a whole, rather than a specific, additional consumer; and (3) that the ALJ did not confer a new service right but recognized a pre-existing right.

On appeal, Peoples contends that the PUC abused its discretion and committed errors of law by interpreting the 1971 CPC to allow Apollo to provide service to Eljer as long as it did not provide nondiscriminatory service to the public in general.

Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law committed or whether findings, determinations or order are supported by substantial evidence. *Equitable Gas Co. v. Pennsylvania Public Utility Commission,* 113 Pa. Commonwealth Ct. 68, 536 A.2d 846 (1988). When reviewing an administrative agency decision involving an exercise of the agency's discretion, we may only overturn the decision where evidence of an abuse of that discretion exists. *Guers Dairy, Inc. v. Milk Marketing Board,* 90 Pa. Commonwealth Ct. 268, 494 A.2d 888 (1985). An agency's failure to interpret statutes, regulations or orders consistent with their clear and plain meaning constitutes an abuse of discretion. *Monessen Southwestern Railway Co. v. Pennsylvania Public Utility Commission,* 507 Pa. 586, 493 A.2d 666 (1985).

Here, the words of the 1971 CPC are clear: Apollo was directed to "confine and restrict" its utility operations to furnishing natural gas to three specific plant sites including the PPG plant in Ford City. The CPC also provided that Apollo could not expand its operation without PUC approval.[4] By allowing Apollo to serve the

---

[4] A public utility may not begin to render service without first obtaining a CPC from the PUC. Section 1101 of the Public Utility Code (Code), 66 Pa. C. S. §1101, provides, *inter alia,* as follows:

Upon the application of any proposed public utility and the approval of such application by the commission evidenced by its certificate of public convenience first had and obtained, it shall be lawful for any such proposed public utility to begin to offer, render, furnish, or supply service within this Commonwealth.

Eljer plant without prior approval, the PUC abused its discretion by failing to give binding effect to the express and plain meaning of its own CPC.

An administrative agency also abuses its discretion when it fails to follow its own regulations and procedures. *See E-Z Parks, Inc. v. Philadelphia Parking Authority,* 100 Pa. Commonwealth Ct. 303, 514 A.2d 318 (1986). In this case, the PUC failed to adhere to the express terms of the CPC in violation of Section 316 of the Code, which states in part:

> Whenever the commission shall make any rule, regulation, finding, determination or order, the same shall be prima facie evidence of the facts found and shall remain conclusive upon all parties affected thereby, unless set aside, annulled or modified on judicial review.

Moreover, the PUC ignored Section 1103(a) of the Code which deems a CPC holder to have waived "any and all objections to the terms and conditions of such certificate." Apollo clearly exercised the authority granted by the CPC and hence waived any objection to its terms. By servicing Eljer without obtaining prior PUC approval, Apollo is in clear violation of the 1971 CPC and of PUC regulations. We hold therefore that the PUC abused its discretion by failing to apply and be bound by Sections 316[5] and 1103(a)[6] of the Code.

Accordingly, we reverse.[7]

---

Similarly, if a public utility desires to provide service to a territory different from that authorized by an existing CPC, the utility must first apply for and obtain a CPC. Section 1102 of the Code, 66 Pa. C. S. §1102.

[5] 66 Pa. C. S. §316.

[6] 66 Pa. C. S. §1103(a).

[7] We also agree with Peoples' contention that the PUC erred by ruling that the ALJ merely recognized Apollo's pre-existing service right. The right recognized by the ALJ dates back to Section 10 of the Natural Gas Companies Act of 1885, 15 P.S. §3547. How-

## Order

The order of the Pennsylvania Public Utility Commission, No. 850521 dated January 5, 1987, is reversed.

Judge COLINS dissents.

———

ever, Section 1204(b) of the Pennsylvania Business Corporation Law (BCL), Act of May 5, 1933, P.L. 364, *as amended,* added by the Act of July 20, 1968, P.L. 459, *as amended,* 15 P.S. §2204(b)(41), provides specifically that Section 10 of the Natural Gas Companies Act of 1885 has been repealed as to any corporation which elects to be governed by the BCL. The record reveals that Apollo elected to be governed by the BCL prior to the acquisition of the pipeline and prior to the issuance of the 1971 CPC. Any pre-existing service rights were thereby extinguished by Apollo's adoption of the BCL.