**MONTOUR TRAIL COUNCIL, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 1995.
Decided Aug. 2, 1995.

---

Richard R. Wilson, for petitioner Montour Trail Council.

Martha R. Smith, Asst. Counsel, for petitioner Dept. of Environmental Resources.

Scott H. DeBroff, Asst. Counsel, for respondent.

Before COLINS, President Judge and KELLEY, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Montour Trail Council (MTC) and the Pennsylvania Department of Environmental Resources (DER), in a consolidated proceeding, appeal from a supplemental opinion and order of the Pennsylvania Public Utility Commission (PUC) dated July 7, 1994.

A brief history of the matter is as follows. By order adopted September 17, 1987 and entered September 28, 1987, the PUC instituted an investigation to determine all matters pertaining to all rail-highway crossings above grade, below grade and at grade of the tracks of the entire system of Montour Railroad Company (MRR) in Allegheny and Washington Counties.[1] Hearings were conducted by an administrative law judge (ALJ), who, on February 21, 1991, filed a recommended decision. By opinion and order entered October 7, 1991, the PUC remanded the matter to the ALJ for consideration to be given to the provisions of Pennsylvania's Rails to Trails Act (Act)[2] which had become effective on March 20, 1991. Additionally, the PUC ordered that DER be notified and made a party to the action on remand pursuant to section 5620 of the Act.[3]

A hearing was conducted by the ALJ following remand. Although DER was notified of the proceeding, it did not present any evidence. On October 20, 1992, the ALJ issued a recommended decision, recommending that five out of six rail-over-highway

---

1. In addition to MRR, fourteen other parties participated in the investigation conducted by the PUC.

2. Act of December 18, 1990, P.L.748, *as amended*, 32 P.S. §§ 5611–5622.

3. Section 5620 provides, in relevant part:

(a) **Method of coordination.**—Whenever the Pennsylvania Public Utility Commission receives or considers any request for the abandonment or removal of a railroad grade crossing, bridge or tunnel, the commission shall notify the Department of Environmental Resources....

crossings in Allegheny County be abolished with the structures to remain in place, and that twelve out of sixteen rail-over-highway crossings in Washington County be abolished with the structures to remain in place.[4] On October 1, 1993, the PUC entered an opinion and order adopting the ALJ's recommended decision. Additionally, the PUC ordered DER to be secondarily liable for the maintenance of the structures remaining after abolishment of the corresponding crossings.

Thereafter, on October 18, 1993, DOT filed a petition for clarification of the PUC's October 1, 1993 order, noting the PUC's failure to set forth its disposition in separate ordering paragraphs.[5] DOT's petition requested, in relevant part, the following:

> 2. The Department seeks clarification of the Order adopted by this Honorable Commission on April 29, 1993 and entered October 1, 1993.
>
> 3. Throughout the above-mentioned Order, there are discussions regarding maintenance responsibility of the roadway and structures, disposition of individual crossings, and allocation of costs.
>
> 4. The ordering paragraphs which are included in the Opinion and Order do not specifically address these matters. In fact, the ordering paragraphs refer to other documents.
>
> 5. The Order, as is, lends itself to confusion and inconsistent interpretations by the numerous parties involved in this proceeding.
>
> 6. The Department respectfully requests that for the sake of clarity and avoidance of future litigation on these issues, that the ordering paragraphs be clarified to include the disposition of each crossing structure, allocation of costs, future maintenance of any remaining structure and future maintenance of roadways.

.    .    .    .    .

(R.R. 386–387a).

On October 28, 1993, prior to the PUC's consideration of DOT's foregoing petition, DER filed a petition for review, docketed at 2543 C.D.1993, from the PUC's October 1, 1993 order. DER asserted in its petition for review that the PUC did not have authority under the Act to hold that DER had "secondary maintenance responsibility" over the remaining structures following abolition of the crossings.

By reason of the foregoing appeal filed by DER, the PUC was unable to act on DOT's petition for clarification as Pa.R.A.P. 1701(a) provides, in relevant part, that "[a]fter an appeal is taken or review of a quasijudicial order is sought, the trial court or other governmental unit may no longer proceed further in the matter." Accordingly, prior to its filing the record in the matter with this Court, the PUC, on December 10, 1993, filed an application for remand with us at 2543 C.D.1993 requesting that we remand the matter to the PUC for it to consider DOT's petition. Specifically, the PUC requested, in relevant part, the following:

> 3. The Commission was unable to act on the Pennsylvania Department of Transportation's Petition for Clarification before the thirty (30) day period prescribed by Pa. R.A.P. 1512(a)(1) in taking any action on the Pennsylvania Department of Transportation's Petition for Clarification by virtue of Pa.R.A.P. 1701. No party to the proceeding before the Commission has filed a timely response denying the allegations set forth in the Pennsylvania Department of Transportation's Petition for Clarification.
>
> 4. The Commission requests that this Honorable Court remand the record in this case to the Commission so that the Commission can fully consider the Pennsylvania Department of Transportation's Petition for Clarification.
>
> 5. Any further appeal by the Pennsylvania Department of Environmental Resources would be from a Commission order which had properly considered the Penn-

---

**4.** Although the PUC's investigation was for the purpose of making disposition of all rail-highway crossings above the grade, below the grade and at grade and the ALJ made disposition of all such crossings, the only crossings at issue here are the rail-over-highway crossings of which there were six such crossings in Allegheny County and sixteen such crossings in Washington County.

**5.** MTC, on November 2, 1993, joined in DOT's petition for clarification.

sylvania Department of Transportation's Petition for Clarification.

6. Counsel for the Pennsylvania Department of Environmental Resources has been contacted and does not oppose or object to this Application for Remand.

7. *The granting of this Application for Remand is in the interest of judicial economy since the Commission has not yet prepared, certified and transmitted the record of this proceeding to this Honorable Court pursuant to Pa.R.A.P. 1951 and 1952 and the Commission's disposition of the case is likely to simplify the Appellate review of this matter.*

. . . . .

(R.R. 382a). (Emphasis added).

By order dated December 13, 1993, we granted the PUC's application for remand; in the same order, we relinquished our jurisdiction over the matter.

On July 7, 1994, the PUC entered a supplemental opinion and order. In addition to setting forth its decision in separate ordered paragraphs, the PUC ordered that twelve of the sixteen rail-over-highway crossings in Washington County which were previously to be abolished with the structures to remain in place, were to be removed. The PUC in its July 7, 1994 supplemental order further ordered that DER was to be secondarily liable for the maintenance of two structures in Washington County, namely, crossings 28 and 32.[6]

MTC and DER filed the within appeals from the PUC's supplemental opinion and order on July 20, 1994 and August 4, 1994 respectively.[7] MTC argues on appeal that the PUC abused its discretion and/or erred as a matter of law when, following this Court's grant of the PUC's application for remand, the PUC changed its disposition regarding the twelve structures to remain in place in Washington County. Additionally, MTC asserts that even if the PUC had authority to change its decision following remand, that the decision to remove the remaining structures in the PUC's supplemental decision was not supported by substantial evidence.

▮ DER appeals from that portion of the PUC's July 7, 1994 opinion and order in which the PUC assigned DER secondary maintenance responsibilities, namely, regarding crossings 28 and 32 found at paragraphs 89, 90, 91, and 92 of the PUC's order. Specifically, DER argues that the PUC did not have authority under either the Act or the Pennsylvania Public Utility Code (Code)[8] to hold it secondarily liable for maintaining the structures to remain at crossings 28 and 32. Initially, we address MTC's argument, i.e., whether the PUC erred in changing its disposition of the twelve remaining structures in Washington County by ordering their removal in its supplemental order dated July 7, 1994.[9]

As noted previously, here, the PUC, prior to transmitting the record in this matter to this Court, sought a remand from this Court to consider DOT's motion because the PUC no longer had jurisdiction over the matter as DER appealed to this Court at 2543 C.D. 1993. Accordingly, when the PUC sought remand from this Court, we had not rendered a decision on the merits of the case; to the contrary, we did not even have the record before us. We granted a remand at the request of the PUC for the general purpose of considering DOT's petition. Rather than retain jurisdiction over the matter and simply hold DER's appeal until the PUC considered DOT's petition, we, instead, relinquished jurisdiction of the matter and left it

---

6. We note that these two crossings were the only crossings which DER was assigned secondary maintenance responsibilities in the PUC's July 7, 1994 supplemental opinion and order.

7. We note that PUC filed a motion to quash MTC's appeal on September 23, 1994 asserting that MTC lacked standing. By order of this Court dated October 27, 1994, said motion was denied.

8. 66 Pa.C.S. §§ 101–3316.

9. Our scope of review in PUC cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the PUC's findings and conclusions are or are not supported by substantial evidence. *Vacation Charters, Ltd. v. Pennsylvania Public Utility Commission*, 133 Pa.Commonwealth Ct. 179, 575 A.2d 640 (1990).

.

to the PUC to reconsider its order in light of DOT's petition; that is exactly what the PUC did in rendering its July 7, 1994 supplemental opinion and order.

As noted above, DOT, in its petition for clarification, specifically requested that the PUC, in ordering paragraphs, set forth its "disposition of each crossing structure, allocation of costs, future maintenance of any remaining structures and future maintenance of roadways." The PUC, in its July 7, 1994 supplemental opinion and order addressed each of these specific requests of DOT.

Furthermore, although MTC maintains that the PUC did not have authority to order the removal of the twelve structures which were to remain in Washington County following remand by this Court, we note that there is nothing in the Code which would prevent the PUC from issuing a later order investigating and making disposition of these crossings as it did. Accordingly, as a matter of judicial economy, we deem the petition of DOT, although labeled "clarification", to be in its entirety not only one for clarification but also for reconsideration. (See the PUC's petition for remand, paragraph 5, set forth hereinabove).

Our review of the record in the matter reveals that there was substantial evidence to support the PUC's July 7, 1994 supplemental opinion and order. Accordingly, as to MTC's appeal at 1754 C.D.1994, we affirm the PUC's July 7, 1994 supplemental opinion and order.

As we hold that the PUC did not err in reviewing and reconsidering its October 1, 1993 disposition in its July 7, 1994 supplemental opinion and order, we now turn to the issue raised by DER, i.e., whether the PUC had authority to impose upon it secondary maintenance responsibility for crossings 28 and 32 in its July 7, 1994 supplemental opinion and order. The PUC in its brief to us in the within appeal concedes that its disposition in its July 7, 1994 supplemental opinion

and order wherein it ordered DER to be secondarily liable for maintaining crossings 28 and 32 was in error and that the remaining structures for crossings 28 and 32 should have been ordered to be removed; in essence, eliminating any maintenance responsibilities. Accordingly, the issue of whether the PUC was authorized to hold DER secondarily liable for maintenance of crossings 28 and 32 is no longer before us. Accordingly, we will vacate that portion of the PUC's July 7, 1994 supplemental opinion and order, namely paragraphs 89, 90, 91 and 92 relating to crossings 28 and 32, and remand the matter to the PUC, at 1914 C.D.1994, to modify its supplemental order dated July 7, 1994 to correct its disposition of crossings 28 and 32 and to specifically eliminate DER as having secondary maintenance responsibility for crossings 28 and 32.[10]

### ORDER

AND NOW, this 2nd day of August, 1995, paragraphs 89, 90, 91 and 92 of the supplemental opinion and order of the Pennsylvania Public Utility Commission dated July 7, 1994 are vacated and the matter is remanded to the Public Utility Commission for modification of said paragraphs relating to crossings 28 and 32 consistent with this opinion.

Jurisdiction relinquished.

### ORDER

AND NOW, this 2nd day of August, 1995, the supplemental opinion and order of the Pennsylvania Public Utility Commission dated July 7, 1994 as modified by our order of even date at No. 1914 C.D.1994 is affirmed.

---

10. MTC, in its appeal to this Court, was not able to specifically complain of the removal of crossings 28 and 32 because the PUC's July 7, 1994 supplemental opinion and order did not order the removal of these structures. However, we recognize that any argument MTC could have made regarding the removal of these two structures would have been exactly the same as the arguments made in this appeal as to the other twelve structures to be removed which we have, hereinabove, rejected.